## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**JAMES OWENS, Inmate No. K83253,**

    **Plaintiff,**

**vs.**

**STEPHEN DUNCAN,**
**PHILLIPE,**
**JOHN DOE 2,**
**ROXANNE McDONALD,**
**CHAD RAY,**
**DANA HALL, and**
**TOBEY RICE,**

    **Defendants.**

)
)
)
)
)
)
)
)
)
)
)
)

**Case No.   14-cv-1093-MJR-SCW**

## <u>MEMORANDUM AND ORDER</u>

**REAGAN, Chief District Judge:**

### I. INTRODUCTION

Plaintiff James Owens, acting *pro se*, brought the present action pursuant to 42 U.S.C. § 1983.   He alleges violations of his constitutional rights based on the actions of prison staff and medical personnel at Lawrence Correctional Center ("Lawrence") where he is currently incarcerated.   This matter is before the Court on two Motions for Summary Judgment filed by Defendants (Docs. 72; 78).   Plaintiff filed responses to each motion, and the motions are ripe for disposition (Docs. 77, 85).   For the reasons articulated below, the Motion for Summary Judgment filed by Defendants Dana Hall

[1]and Phillippe (Doc. 72) is **GRANTED in part and DENIED in part**, and the Motion filed by Defendants Stephen Duncan, Roxanne McDonald, Chad Ray, and Tobey Rice (Doc. 78) is also **GRANTED in part and DENIED in part**.   The case will be allowed to proceed beyond summary judgment as to Defendant Phillipe, and as to Defendant Duncan for injunctive relief.

## II.   SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment motions.   The rule states that summary judgment is appropriate only if the admissible evidence considered as a whole shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.   ***Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014) (citing FED.R.CIV.P. 56(a))**.   The party seeking summary judgment bears the initial burden of demonstrating – based on the pleadings, affidavits and/or information obtained via discovery – the lack of any genuine issue of material fact.   ***Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)**.   A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   ***Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)**.   ***Accord Bunn v. Khoury Enterpr. Inc.*, 753 F.3d 676, 681 (7th Cir. 2014)**.

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party.   ***Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012); *Delapaz v. Richardson*,**

---

[1]  Defendant Hall was formerly known as Dana Darnold.

**634 F.3d 895, 899 (7th Cir. 2011)**.   As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Cmty. Contacts, Inc.*, **756 F.3d 542, 544 (7th Cir. 2014)**.

### III.   FACTUAL BACKGROUND

On January 20, 2014, Plaintiff entered the mess hall at Lawrence for lunch sometime between 10:30 a.m. and 11:00 a.m.   (Doc. 73-1, p. 16, 31; Doc. 85, p. 2).   While sitting at a table after eating, Plaintiff suffered an injury to his left leg relating to his sciatica.   (Doc. 73-1, p. 31; Doc. 85, p. 2).   Plaintiff was in pain and could not stand up due to the injury.   (Doc. 73-1, p. 13 – 14).   At that time, the other inmates at Plaintiff's table informed Plaintiff's wing officer, who then retrieved another correctional officer. (*Id.* at 17.).   The correctional officer was informed at roughly 10:50 a.m.   (Doc. 85, p. 2). The officer went over to Plaintiff's table, and told Plaintiff to get up to go to his wing. (Doc. 73-1, p. 17).   When Plaintiff stated that he could not get up, the correctional officer threatened to spray him with mace, to which Plaintiff responded by reiterating his inability to move from the table.   (*Id.*).   At that point, by 11:00 a.m., Defendant Ray, a lieutenant, came over to Plaintiff's table and was informed of Plaintiff's injury.   (*Id.* at 17, 31).   Defendant Ray summoned a second wing officer, and that wing officer and the correctional officer lifted Plaintiff up from under his arms and carried him to an empty table by the door.   (*Id.* at 17, 18).   According to Plaintiff, at roughly the same time,

Defendant Ray radioed the healthcare unit for assistance.[2]   (Doc. 85, p. 2).   Plaintiff did not exhibit symptoms such as shortness of breath or bleeding.   (*Id.* at 2).

Roughly 30 minutes later,[3] Defendant Hall arrived from the healthcare unit with a wheelchair.   (Doc. 77, p. 6; Doc. 73-1, p. 32; Doc. 85, p. 2).   Defendant Hall does not recall at what time the call to healthcare was received, but she does know the call was not made as an emergency.   (Doc. 73-3, p. 1).   While medical records indicate that Defendant Hall took Plaintiff's vitals at roughly 11:20 a.m., (Doc. 73-2, p. 1), Plaintiff testified that he is certain it was after 11:30 a.m. before Defendant Hall arrived because at least two lines of inmates ate after his unit, which left at 11:00 a.m., and it would have taken roughly 10 to 15 minutes for each line to eat (Doc. 73-1, p. 32).

When Defendant Hall arrived, Plaintiff transferred himself from the table to the wheelchair without standing since no one offered him assistance.   (*Id.* at 20).   Plaintiff claims that it was extremely difficult and painful, but he was able to get himself into the wheelchair.   (*Id.* at 21, 34).   He testified it was obvious that he was in a lot of pain.   (*Id.* at 21).   Defendant Hall then wheeled Plaintiff to the healthcare unit waiting room, where, upon instruction, Plaintiff slid off the wheelchair onto a bench.   (*Id.* at 20).

---

[2] At his deposition, Plaintiff was not sure what time Defendant Ray radioed the healthcare unit, (Doc. 73-1, p. 18), however, twice in his Response to Defendant Ray's Motion, Plaintiff states that Defendant Ray contacted the healthcare unit at around 11:00 a.m. (Doc. 85, p. 2, 8).

[3] While Plaintiff initially testified that it took "over an hour" for a wheelchair to be brought to the mess hall, (Doc. 73-1, p. 19), upon further questioning and in response to the motions at bar, at various times, Plaintiff has stated that Defendant Hall left him sitting in the mess hall for 30 minutes, that it was after 11:30 a.m. when she arrived, and that she took him to the healthcare unit around 11:40 a.m.   (Doc. 73-1, p. 32; Doc. 77, p. 6; Doc. 85, p. 2).   Therefore, reasonably viewing the facts in Plaintiff's favor, given that Defendant Ray radioed at around 11:00 a.m., a reasonable juror could conclude that Plaintiff waited roughly 30 minutes for Defendant Hall.

Sometime later, Defendant Hall returned to the waiting room and made Plaintiff walk 16 to 18 feet to the medical lab for a blood draw.   (*Id.*).   Plaintiff claims that he had to wait in the waiting room a long time before being taken to the lab.   He first testified that he had "no idea" on the exact time she retrieved him from the waiting room, but that it "seemed like forever."   (*Id.* at 20).   In his response to Defendant Hall's motion, relying on a medical record, Plaintiff now states that he waited in the waiting room for an hour and a half.   (Doc. 77, p. 6).   Defendant Hall disputes this timeline, stating that Plaintiff's vitals were taken at 11:20 a.m. and medication for him was ordered by 11:50 a.m.   (Doc. 79-3, p. 2).

Plaintiff believes that walking from the waiting room to the lab exacerbated his injury, but he has no evidence to support this belief, such as the advice or opinion of a medical professional.   (*Id.* at 34).   In the lab, Defendant Hall took Plaintiff's vitals and wheeled him into the infirmary.   After that brief interaction, Plaintiff did not Defendant Hall again.   Plaintiff was placed in a bed, given a muscle relaxer and a Vicodin, and was seen by a doctor the next morning.   (*Id.* at 21).

A few days later, on January 23, 2014, when Plaintiff was returning to his cell from a meal, he informed Defendant McDonald that he was suffering from pain in his leg.   (Doc. 73-1, p. 21; Doc. 85, p. 2 – 3).   Defendant McDonald was in the housing wing control room known as the "bubble".   (Doc. 73-1, p. 22).   Plaintiff informed her that he needed emergency care and asked her to contact the cell house lieutenant since he was the person who could get Plaintiff to the healthcare unit on an emergency basis.   Doc.

85, p. 2 – 3).   Defendant McDonald, however, merely shrugged her shoulders and refused to call for the lieutenant.   (Doc. 73-1, p. 22; Doc. 85, p. 3).   Plaintiff was on a pain medication at this time already; however, the pain medication was not working. (Doc. 73-1, p. 24).   When he was later seen by a doctor for his pain, Plaintiff was not given new pain medication.   (*Id*.).   Additionally, he had been told by Doctor Coe on January 22, 2014, that the doctor was ordering a cane for him; however, Plaintiff had not received it when he saw Defendant McDonald.   (*Id*.).   A medical permit provided by Plaintiff indicates that Dr. Coe ordered a cane on March 10, 2014.   (Doc. 85-1, p. 36). Plaintiff did not receive the cane until May or June of the same year.   (Doc. 73-1, p. 24). He believes that if Defendant McDonald contacted the lieutenant he would have received his cane sooner and would have been given pain medication.   (*Id*.).

In addition, Plaintiff claims that on the January 22, 2014 visit with Dr. Coe, the doctor informed him that he would order Plaintiff a second foam mattress to help with his sciatic pain.   (*Id*. at 28, 30).   By the time of his next visit with Dr. Coe, however, Plaintiff had not received the mattress, and Dr. Coe informed him that Plaintiff would have to request a mattress from the clothing room or security staff because the doctor could not order it.   (*Id*. at 28.).   Plaintiff admits, however, that he has not seen any indication in his medical records of Dr. Coe's intent to order a second mattress.   (*Id*.).

Plaintiff spoke with a housing unit lieutenant regarding requesting a second mattress and was instructed that he should contact the clothing room supervisor.   (*Id*.). Plaintiff sent multiple written requests to the supervisor over a couple of weeks.   (*Id*. at

28 – 29).  The requests indicated that Dr. Coe had informed Plaintiff he was ordering Plaintiff a mattress, but that Plaintiff had to go through the supervisor to receive it.  (*Id.* at 28).  Plaintiff also submitted multiple grievances regarding obtaining a second mattress, both on an emergency basis and in the regular manner.  (*Id.* at 29).  Though Plaintiff submitted his request in the typical manner, and had received responses to prior requests, Plaintiff received no response from the clothing room supervisor, Defendant Rice, regarding the foam mattress.  (*Id.*).  In October 2014, Counselor Tony Kittle responded to one of Plaintiff's grievances about a second foam mattress.  (Doc. 85-1, p. 10 – 11, 14).  Kittle's response included a response from Dr. Coe that merely instructed Plaintiff to participate in nurse sick call if he had a problem.  (*Id.* at 14, 15).  Plaintiff has yet to receive a second foam mattress.  (*Id.* at 30).

On May 6, 2014, Plaintiff was seen by a nurse in sick call for a possible fungal infection.  (Doc. 73-1, p. 5; Doc. 73-2, p. 5).  At the visit, Plaintiff told the nurse that the cream he had been given was not working.  (Doc. 73-1, p. 5; Doc. 73-2, p. 5).  The following day, May 7th, Plaintiff was in the law library when he pulled a muscle in his back, causing him pain.  (Doc. 73-1, p. 5).  On the same day, Plaintiff received a call pass for another sick call visit for the next day, May 8th.  (*Id.* at 6).  Plaintiff did not know the purpose of this sick call visit until he arrived.  (*Id.*).

Plaintiff saw Defendant Phillippe during the May 8, 2014 sick call.  (*Id.* at 7).  Plaintiff claims that, during the visit, he informed Defendant Phillippe of his back pain, and noted that it was "extreme pain."  (*Id.*).  According to Plaintiff, Defendant Phillipe

refused to treat him for his back pain, stating that he had been brought to sick call for treatment for his fungal infection.   (*Id.*).

For her part, Defendant Phillippe states that she does not recall Plaintiff informing her on this visit that he injured his back.   (Doc. 73-4, p. 2).   According to her, if Plaintiff had told her he injured his back the previous day, she would have performed an assessment.   (*Id.* at 2 – 3).   In an instance where an inmate brings up medical issues that are in addition to the issue or issues for which she is scheduled to evaluate him, Defendant Phillippe will evaluate the inmate, and will address the additional issue only if it is an urgent or emergent need.   (*Id.* at 2).   Otherwise, she instructs the inmate that the proper procedure is to make a new request to first be seen in nurse sick call.   (*Id.*). Defendant Phillippe claims that Plaintiff did not exhibit signs or symptoms indicating an urgent or emergent problem with his back during the May 8, 2014 visit.   (*Id.* at 3).

Plaintiff sought follow-up care for his back injury, and medical records reflect that he was seen on May 13, 2014 to address the injury (Doc. 77, p. 23).   At that time he was prescribed medication for the injury (*Id.*).   Further, Plaintiff was seen on three or more subsequent dates in May of 2014 to address a torn muscle in his back (*Id.*, p. 24-27).

Finally, Plaintiff is dissatisfied with the state of his healthcare in general and seeks injunctive relief to remedy the situation.   At his deposition, Plaintiff testified he wants

> injunctive relief to compel them to give me proper medical treatment in the future…while I'm still under their custody so that I don't have to wait five months for a cane or four months for a cane, eight months for a back brace. That if I request emergency healthcare that they take me to see a doctor, that I don't have to wait for three weeks to finally see a doctor after pulling

a muscle in my back.  That I'd be given proper medication, you know, something that will actually relieve the pain when I tell them that this isn't doing any good.  I'm maxing out the amount of pain medication that you're giving me.   I'm taking as much as that is medically safe to take, and it's not taking care of the —

(Doc. 73-1, p. 35).   Plaintiff also testified that there is "no reason [he] shouldn't have a second mattress when the doctor recommended it."   (*Id.*).

IV.   PROCEDURAL POSTURE

On October 8, 2014, Plaintiff filed suit against Roxanne McDonald (f/k/a Roxanne Clodfeter), Nurse Practitioner Phillippe, Warden Duncan, Nurse Practitioner Burches, Dr. Coe, Tony Kittle, and four John Does.   (Doc. 1).   On merits review pursuant to 28 U.S.C. § 1915A, the Court dismissed Defendants Burches and Coe.   (Doc. 5).   Defendant Kittle was later dismissed due to Plaintiff's failure to exhaust his administrative remedies on his claims against the defendant.   (Doc. 62).   Chad Ray, the lunchroom lieutenant, Dana Hall (f/k/a Dana Darnold), the nurse who retrieved Plaintiff from the lunchroom, and Clothing Supervisor Tobey Rice were substituted for John Does 1, 3, and 4, respectively.   (Doc. 49).   At the same time, Plaintiff was ordered by Magistrate Judge Williams to inform the Court whether John Doe 2 is "John Sloan" no later than November 13, 2015.   (*Id.* at 2).   Plaintiff failed to do so, however, and John Doe 2 is therefore **DISMISSED**.

Therefore, pursuant to the threshold order, and subsequent procedural history, the following single count remains:

**Defendants McDonald, Phillippe, Ray, Hall, and Rice were deliberately**

> **indifferent to Plaintiff Owens' serious medical needs, in violation of the Eighth Amendment—Warden Duncan, in his official capacity only, is a defendant to this count for purposes of injunctive relief.**

(*See* Doc. 5, p. 4).   The Defendants now seek summary judgment in their favor.   (Doc. 72; Doc. 78).

## V.   ANALYSIS

The single count against the remaining Defendants in this matter alleges deliberate indifference in violation of the Eighth Amendment.   Prison officials violate the Eighth Amendment's proscription against "cruel and unusual punishments" if they display deliberate indifference to an inmate's serious medical needs.   **Greeno v. Daley, 414 F.3d 645, 652–53 (7th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks omitted)).   *Accord Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) ("Deliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution.").**   A prisoner is entitled to reasonable measures to meet a substantial risk of serious harm — not to demand specific care.   **Holloway v. Delaware Cnty. Sheriff, 700 F.3d 1063, 1074 (7th Cir. 2012) (stating that a prison doctor "is free to make his own, independent medical determination as to the necessity of certain treatments or medications, so long as the determination is based on the physician's professional judgment and does not go against accepted professional standards"); *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).**   Although a prison official may not continue a course of treatment he knows is blatantly ineffective, prisoners are not entitled to receive

unqualified access to healthcare.  *See Holloway*, **700 F.3d at 1073-74.**   A doctor may provide the care he feels is reasonable so long as it falls within a "range of acceptable courses based on prevailing standards in the field." *Id.* **at 1073.**

To prevail, a prisoner who brings an Eighth Amendment challenge of constitutionally-deficient medical care must satisfy a two-part test.  *Arnett v. Webster*, **658 F.3d 742, 750 (7th Cir. 2011).**   The first prong is whether the prisoner has shown he has an objectively serious medical need.  *Arnett*, **658 F.3d at 750.**  *Accord Greeno*, **414 F.3d at 653.**   A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated.  *Gayton v. McCoy*, **593 F.3d 610, 620 (7th Cir. 2010).**  *Accord Farmer v. Brennan*, **511 U.S. 825, 828 (1994) (violating the** *Eighth Amendment* **requires "deliberate indifference to a** *substantial* **risk of** *serious* **harm.") (internal quotation marks omitted) (emphasis added).**   Only if the objective prong is satisfied is it necessary to analyze the second, subjective prong, which focuses on whether a defendant's state of mind was sufficiently culpable.  *Greeno*, **414 F.3d at 652–53.**

Prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health.  *Greeno*, **414 F.3d at 653.**   The plaintiff need not show the defendant literally ignored his complaint, just that the defendant's actions in response to the issue were so callous that the acts support an inference the Defendant was aware of the serious

medical condition and either intentionally or recklessly disregarded it. *Hayes v. Snyder*, **546 F.3d 516, 524 (7th Cir. 2008).** Deliberate indifference is not negligence; rather it is more akin to intentional wrongdoing. *McGee v. Adams*, **721 F.3d 474, 480 (7th Cir. 2013).** The standard is "essentially a criminal recklessness standard," and even gross negligence will not meet this standard. *Id.* **at 481**.

### 1. Defendants Ray and Hall

There is no evidence in the record sufficient for reasonable to juror to find that Defendants Ray and Hall were deliberately indifferent during the January 20, 2014 incident in the mess hall. Rather, the record indicates that the Defendants took reasonable measures to address Plaintiff's medical needs. Plaintiff essentially asserts that Defendant Ray was deliberately indifferent in failing to get Defendant Hall to the mess hall sooner. He argues that though Ray radioed the healthcare unit at roughly 11:00 a.m., it took until 11:40 a.m. for Defendant Hall to arrive, and Defendant Ray did not do anything further to get Plaintiff medical care after radioing.

Defendant Ray acted reasonably, however. The undisputed facts indicate that at some point within ten minutes from the correctional officer who threatened to mace Plaintiff being informed of Plaintiff's injury, Defendant Ray came over to the table where Plaintiff was sitting, summoned another officer, had Plaintiff moved to an empty table, and radioed the healthcare unit. There is no evidence that Defendant Ray delayed in acting to assist Plaintiff, nor is there any evidence that Defendant Ray bears any responsibility for the time it took Defendant Hall to arrive at the mess hall. Of course,

one could come up with any number of actions Defendant Ray could have taken in order to get Plaintiff to healthcare quicker; however, the test for deliberate indifference is not whether Defendant Ray did every single thing he could do to address Plaintiff's needs. Rather, what is determinative is whether Defendant Ray took reasonable measures to address Plaintiff's medical need.  Given the nature of Plaintiff's medical need, the record indicates that Defendant Ray took such reasonable measures and that summary judgment is appropriate as to him.

There is also no evidence in the record to suggest that Defendant Hall did anything other than take reasonable measures to address Plaintiff's medical needs.   It is not clear at exactly what time Defendant Hall was notified of Plaintiff's situation in the mess hall; however, the call was not made as an emergency.   Plaintiff essentially argues that the mere fact that it took roughly 30 minutes for Defendant Hall to arrive at the mess hall is demonstrative of deliberate indifference on her part.   The argument fails, however.  Though it may have taken Hall 30 minutes to arrive, there is simply no evidence that Defendant Hall intentionally delayed in responding to the call.   It is unreasonable to expect Defendant Hall to arrive instantaneously upon receiving the call, regardless of the proximity of the healthcare unit to the mess hall, particularly given that the call was a non-emergency.   The mere fact of a 30 minute delay alone, without any evidence of intentional delay on the part of Defendant Hall, is not evidence sufficient for a reasonable to juror to conclude the Defendant was deliberately indifferent.   Further, there is no evidence to suggest that Plaintiff's supposed hour and a half wait in the

healthcare waiting room was caused by deliberate indifference.[4]   Rather than acting with deliberate indifference toward Plaintiff, Defendant Hall took his vitals and placed him in the infirmary, where Plaintiff was the recipient of a muscle relaxer and Vicodin.

Nor did Defendant Hall violate Plaintiff's Eighth Amendment rights when she did not offer to help Plaintiff into his wheelchair and when she required him to walk from the waiting room to the medical lab.   Plaintiff argues that these occurrences violated his rights because they caused him a great deal of pain and/or they aggravated his sciatic injury.   Though moving into the wheelchair and walking to the lab may have been painful, there is no evidence to suggest that any alternatives would have been pain free (not to mention that it appears Plaintiff failed to affirmatively request assistance into the wheelchair in the first place).   For instance, had Plaintiff been wheeled into the lab, he would have had to transition in and out of the wheelchair.   Further, by his own admission, Plaintiff has no expert medical evidence to support his assertion that either his transition to and from the wheelchair or ambulating to and from the medical lab exacerbated his sciatica.

Plaintiff's claims against Defendants Ray and Hall essentially amount to a series of complaints wherein Plaintiff seeks for the Court to miss the forest through the trees. While Plaintiff singles out specific issues he has with how the two defendants handled his leg injury, he misses the big picture, which is that Defendants Ray and Hall responded to and addressed Plaintiff's medical needs.   Plaintiff essentially asks the

---

[4]  If Plaintiff were to present to an emergency room in a hospital in a major city complaining of sciatic pain, he could expect to wait at least an hour and a half in the waiting room.

Court to find that Defendants should have tailored their medical care specifically to his wishes.   The Eighth Amendment does not guarantee Plaintiff specific care tailored to his desire, however.   *Holloway***, 700 F.3d at 1073-74;** *Forbes***, 112 F.3d at 267.**   Rather, Plaintiff is entitled to reasonable measures to meet his serious medical needs.   *Id*.   The evidence is such that no reasonable juror could find that Defendants Ray and Hall did anything other than take such reasonable measures.   The motions for summary judgment are **GRANTED** as to Defendants Ray and Hall.

### 2.  Defendant McDonald

Though Defendant McDonald ignored Plaintiff's complaints of pain, the record fails to demonstrate that Plaintiff suffered any harm from the Defendant's lack of action. Plaintiff contends that had Defendant McDonald summoned a lieutenant to be taken to healthcare on an emergency basis, he would have received his cane sooner and would have been given pain medication.   The records provided by Plaintiff, however, indicate that Dr. Coe placed what was likely a second order for a cane in March 2014, well after his encounter with Defendant McDonald, and yet Plaintiff still did not receive his cane until May or June.   Plaintiff's assertion that he would have received his cane sooner had Defendant McDonald acted on his complaints is based on speculation as it is unsupported by evidence.   Further, Plaintiff was already on a pain killer at the time he saw Defendant McDonald, and when Plaintiff later saw a doctor for his pain at sick call he was not given a new pain killer.   Though Defendant McDonald may have caused Plaintiff a delay in treatment, a delay alone does not constitute deliberate indifference.

*See Perez v. Fenoglio*, **792 F.3d 768, 777-78 (7th Cir. 2015) ("A delay in treatment may show deliberate indifference if it exacerbated the inmate's injury or unnecessarily prolonged his pain);** *Company v. Justus*, **2006 WL 2325021, at \*3, 05-743-GPM (S.D. Ill. August 9, 2006) ("[A]n allegation of mere delay in providing treatment, without more, will not state a claim for deliberate indifference.") (citing** *Shockley v. Jones*, **823 F.2d 1068, 1072 (7th Cir. 1987))**.   Here, there are simply no facts set forth by the Plaintiff to suggest that the delay caused him lasting and irreparable harm, or that Defendant McDonald intended to cause such harm by her actions.   At best, it could be said that Defendant McDonald's actions were negligent, but negligence is not enough to establish deliberate indifference.   No reasonable juror could find that Plaintiff was *permanently* harmed by Defendant McDonald's *intentional* delay, and summary judgment as to Defendant McDonald is **GRANTED**.

### 3. Defendant Rice

In order to be deliberately indifferent to a serious medical need, a person must first have actual knowledge of that need.   In the case at bar, assuming Plaintiff had a serious medical need for a second foam mattress, there is not sufficient evidence demonstrating that the clothing room supervisor, Defendant Rice, had actual knowledge of such a need.   Viewing the facts in Plaintiff's favor, a reasonable juror could conclude that Defendant Rice received and read at least one of the requests written by Plaintiff. Therefore, one could find that Defendant Rice had knowledge of Plaintiff's *request* for another mattress.   The only evidence suggesting that Defendant Rice had any

knowledge as to why Plaintiff needed the mattress, however, is that Plaintiff testified[5] that his requests informed Defendant Rice that Dr. Coe was ordering Plaintiff a mattress. There is no evidence suggesting that Plaintiff's requests indicated why Dr. Coe wanted a second mattress for Plaintiff, and the lack of medical documentation regarding Dr. Coe's purported intent to obtain a mattress for Plaintiff demonstrates that Defendant Rice could not have received any medical documentation accompanying Plaintiff's requests. The fact that Plaintiff mentioned Dr. Coe's name in at least one of his requests to Defendant Rice is not alone sufficient to allow a juror to find that Rice had knowledge of a serious medical need of Plaintiff's.   Though Plaintiff also sent grievances regarding obtaining a new foam mattress, none of the grievances suggest that Defendant Rice was made aware of them.   In fact, one of the grievances was responded to by *Dr. Coe* who, instead of stating that Plaintiff should be given a second mattress, indicated that Plaintiff should put in for sick call if he had any issues.   (Doc. 85-1, p. 10-11, 14).   Though at his deposition, Plaintiff professed his belief that Defendant Rice was aware of the necessity for a foam mattress since at least one grievance was sent as an emergency, (Doc. 73-1, p. 29), that belief is not borne out by the face of the grievances themselves.   In fact, Plaintiff admitted that, other than the number of requests slips he sent, he had no way of demonstrating that Defendant Rice received notification of any kind regarding the medical necessity of the foam mattress request.   Therefore, a reasonable juror could not find Defendant Rice had knowledge of a serious medical need.

---

[5] The written requests are not part of the record.

Plaintiff argues that Defendant Rice showed deliberate indifference because he failed to "even investigate if [Plaintiff] needed and was entitled to a second mattress…." (Doc. 85, p. 8).   However, Plaintiff's written requests merely indicating that Dr. Coe was ordering a mattress for Plaintiff did not give rise to any duty to investigate on the part of Defendant Rice.   In fact, an assertion that Defendant Rice failed to investigate a serious medical need is essentially a concession that the Defendant did not possess the requisite knowledge of such need.   Under the deliberate indifference standard, the focus in on what the defendant actually knew, rather than what he should have known.   *See Farmer*, **511 U.S. at 838 – 39**.   Summary judgment is **GRANTED** as to Defendant Rice.

### 4.  Defendant Phillippe

The record demonstrates a genuine issue of material fact as to whether Defendant Phillippe was deliberately indifferent to Plaintiff's serious medical needs during the May 8, 2014 sick call visit.   A medical condition that, if not treated, would result in unnecessary and wanton infliction of pain can constitute a serious medical condition. *Gayton*, **593 F.3d at 620**.   Plaintiff claims that during his visit with Defendant Phillippe he was suffering "extreme pain" due to an injury he sustained the previous day.   There is no evidence in the record to indicate why a reasonable juror could not believe these claims of pain.   Moreover, the need was clearly persistent since Plaintiff sought further treatment for it on May 13, 2014, and received a prescription for the issue.   (Doc. 77, p. 23).   As such, whether Plaintiff was indeed suffering from severe pain is an issue for a jury.   *See Cooper v. Casey*, **97 F.3d 914, 917 (7th Cir. 1996) (whether the plaintiffs were**

**in sufficiently severe pain such as to entitle them to pain medication was an issue for the jury) (citing *Murphy v. Walker*, 51 F.3d 714, 719 (7th Cir. 1995))**. Therefore, a jury could reasonably find Plaintiff had an objectively serious medical need during his May 8 sick call visit with Defendant Phillippe.

As for the issue of the Defendant's subjective knowledge, there is clearly a genuine factual dispute as to whether Plaintiff informed Defendant Phillippe of his back pain.   Plaintiff states he informed Defendant Phillippe of his back pain during the May 8 visit, but that she ignored his complaints.   Defendant Phillippe, on the other hand, claims that the purpose of the May 8 visit was for treatment of the fungal infection, and that there was no indication in Plaintiff's medical record, or at the visit, of the back pain of which Plaintiff alleges he complained.   Defendant's position, however, only highlights the existence of a factual dispute.   Further, the underlying purpose of Plaintiff's visit is largely irrelevant.   If Defendant Phillippe ignored Plaintiff's serious back pain, of which he voiced complaints, then the Defendant violated Plaintiff's Eighth Amendment rights, even if the purpose of his visit was related to treatment of a possible fungal infection.   A jury could reasonably find that Plaintiff's May 8, 2014 sick call visit played out in such a manner, and if so, Defendant Phillippe was deliberately indifferent to one of Plaintiff's serious medical needs.

Defendant Phillippe argues that even if she violated Plaintiff's Eighth Amendment rights, she is entitled to qualified immunity.   Qualified immunity shields prison officials from civil liability when their conduct "does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, **136 S.Ct. 305, 308 (2015).**   In order for a defendant to be subject to qualified immunity, the Supreme Court's jurisprudence does not require a case directly on point, but, rather, there must be existing precedent placing the statutory or constitutional question "beyond debate."   *Id.* **(quoting** *Ashcroft v. al-Kidd*, **563 U.S. 731, 741 (2011)**.   In the case at bar, Defendant Phillippe merely argues that her status as a healthcare provider through Wexford Health Sources, Inc. does not preclude her from being subject to qualified immunity.   She makes no argument in regard to whether a violation of a clearly established right occurred.   As such, she has not properly raised the issue of qualified immunity.   Regardless, the Court has no problem finding that if Defendant Phillippe had conducted the May 8 visit as Plaintiff alleges, she then violated a clearly established right.   *See, e.g., Jervis v. Mitcheff*, **258 Fed. Appx. 3, 6 (7th Cir. 2007) (concluding that a fact finder could determine that defendant was deliberately indifferent if, as plaintiff alleged, defendant refused to adequately investigate and diagnose the source of plaintiff's pain, while insisting there was nothing wrong with plaintiff).**   Therefore, Summary Judgment is **DENIED** as to Defendant Phillippe.

   **5.  Defendant Duncan**

   Warden Duncan is a Defendant in this suit for injunctive purposes only. Injunctive relief is available in a suit brought under § 1983 pursuant to the *Ex parte Young* exception to the Eleventh Amendment's prohibition of lawsuits against states in federal court.   *Ex parte Young* provides that a citizen may sue a state official for injunctive relief

when the official's action violates federal law.  ***Ex parte Young*, 209 U.S. 123, 159 – 60 (1908)**.   Injunctive relief is only available where an ongoing or threatened violation of federal law exists.  ***Vickery v. Jones*, 100 F.3d 1334, 1346 (7th Cir. 1996)**.   Absent a continuing violation, injunctive relief is improper.  ***Kress v. CCA of Tenn., LLC*, 694 F.3d 890, 894 (7th Cir. 2012) (citing *Green v. Mansour*, 474 U.S. 64, 73 (1985))**.

For a court to issue a permanent injunction, a plaintiff must demonstrate: (1) success on the merits; (2) irreparable harm; (3) that the benefits of granting the injunction outweigh the injury to the defendant; and (4) that the public interest will not be harmed by the relief requested.  ***ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist.*, 672 F.3d 492, 498 (7th Cir. 2012)**.   Under the Prison Litigation Reform Act ("PLRA") an injunction in a prisoner lawsuit must be "narrowly drawn" and can extend "no further than necessary to correct the violation."   **18 U.S.C. § 3626(a)(1)**.

At his deposition, Plaintiff indicated he seeks injunctive relief to compel Lawrence to provide him with "proper medical treatment", and listed complaints for having to wait several months to receive a cane and a back brace.  The Court cannot issue an injunction ordering that Plaintiff simply be given "proper medical treatment". Such an order is vague and would run afoul of the PLRA's requirement that injunctive relief in prisoner lawsuits be narrowly drawn.  Additionally, Plaintiff's complaints relating to having to wait several months for a cane and back brace are not subject to prospective injunctive relief.

In his response to Defendant Duncan's motion, Plaintiff states that he is still not

receiving pain medication and has not been provided a second mattress.   There is no evidence in the record sufficient to allow the Court to determine that Plaintiff is entitled to new or different pain medication, however.   At his deposition, Plaintiff indicated he was taking pain medication, and there is no indication in the medical records before the Court providing that Plaintiff should currently be on a different medication or given a higher dosage.   The references to pain medication that are contained in medical records date back to 2014 and 2015.   There are no recent records suggesting that Plaintiff is entitled to new or more pain medication.   Rather, the evidence indicates that Plaintiff merely disagrees and is not satisfied with the medication that has been prescribed to him.   There is not sufficient medical evidence in the record to demonstrate a continuing constitutional violation relating to Plaintiff's pain medication.

Plaintiff shall be allowed to go forward in seeking injunctive relief to obtain a foam mattress, however.   While a juror could not find that Defendant Rice possessed the requisite knowledge regarding the serious medical need relating to Plaintiff's request for a foam mattress, there is an issue of fact as to whether the serious medical need existed in the first place.   Plaintiff testified he was told by Dr. Coe that the doctor was going to order Plaintiff a second mattress to relieve pressure on his hip, and as Dr. Coe is likely an agent of IDOC, this testimony is likely admissible and subject to consideration by the Court.   *See* **FED.R.EVID. 801(d)(2)(D)**.   If Plaintiff requires a second mattress to help with his sciatica by relieving pressure on his hip, and has not received such a mattress, then an ongoing constitutional violation exists.   There are sufficient facts for a

trier of fact to determine that Plaintiff has a serious medical need which can be addressed by a second mattress.   Further, not only would ongoing pain cause Plaintiff irreparable harm, but there is also little burden in requiring IDOC to provide Plaintiff with a second mattress, and such relief would not harm the public interest.   Therefore, Plaintiff may pursue prospective injunctive relief seeking IDOC to provide him with another mattress.

### VI.   CONCLUSION

For the reasons stated above, the Motions for Summary Judgment filed by the Defendants (Docs. 72, 78) are **GRANTED in part and DENIED in part**.   Summary Judgment is **GRANTED** as to Defendants Hall, Ray, McDonald, and Rice; however, it is **DENIED** as to Defendant Phillippe.   The Clerk of Court is **DIRECTED** to enter judgment for Defendants Hall, Ray, McDonald, and Rice.   Summary Judgment is **GRANTED in part and DENIED in part** as to Defendant Duncan, as Plaintiff shall only be allowed to seek an injunction ordering that he be given a second foam mattress. Finally, since Plaintiff did not confirm the identity of John Doe 2 in the time allotted by Judge Williams, John Doe 2 is **DISMISSED**.

**IT IS SO ORDERED**.

DATED: January 12, 2017

*s/ Michael J. Reagan*
MICHAEL J. REAGAN
**Chief Judge**
**United States District Court**